**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC, | |
| Plaintiff, | Civil Action No. <u>7:25-cv-00342</u> |
| v. | |
| GRADY RENTALS, LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Fleet Connect Solutions LLC ("<u>Fleet Connect</u>" or "<u>Plaintiff</u>") files this complaint against Grady Rentals, LLC ("Grady Rentals" or "<u>Defendant</u>") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

<u>**NATURE OF THE ACTION**</u>

1.      This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "<u>Asserted Patents</u>"):

| | Patent Number | Title | Available At |
|---|---|---|---|
| 1 | 7,058,040 | Channel Interference Reduction | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7058040 |
| 2 | 7,742,388 | Packet Generation Systems and Methods | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7742388 |
| 3 | 7,656,845 | Channel Interference Reduction | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7656845 |
| 4 | 7,260,153 | Multi Input Multi Output Wireless Communication Method and Apparatus Providing Extended Range and Extended Rate Across Imperfectly Estimated Channels | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7260153 |

|   | Patent Number | Title | Available At |
|---|---|---|---|
| 5 | 7,206,837 | Intelligent Trip Status Notification | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7206837 |
| 6 | 7,593,751 | Conducting Field Operations Using Handheld Data Management Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7593751 |
| 7 | 6,961,586 | Field Assessments Using Handheld Data Management Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6961586 |
| 8 | 8,494,581 | System and Methods for Management of Mobile Field Assets *via* Wireless and Held Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8494581 |
| 9 | 7,741,968 | System and Method for Navigation Tracking of Individuals in a Group | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7741968 |

2.    Plaintiff seeks monetary damages and injunctive relief.

## PARTIES

3.    Plaintiff is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4.    Based on public information, Defendant Grady Rentals is a limited liability company organized under the laws of the State of Texas with its principal place of business located at 2745 S. Highway 171, Cleburne, TX 76031-0756.

5.    Based on public information, Defendant's registered agent for service is Bush Rudnicki Shelton, P.C., at 200 N. Mesquite St., Suite 200, Arlington, TX 76011.

## JURISDICTION AND VENUE

6.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-5 above as though fully set forth in their entirety.

7.    This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8.      Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District from those regular and established places of business. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9.      Defendant offers products and services, including through the manufacture, sale, importation, use, and/or testing of Accused Products, and conducts business in this District.

10.     Defendant is subject to this Court's specific and general personal jurisdiction under due process due at least to Defendant's substantial business in this judicial district, including:  (i) at least a portion of the infringements alleged herein; (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District; (iii) having an interest in, using or possessing real property in Texas and this District; (iv) and having and keeping personal property in Texas and in this District.

11.     Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District.

12.     Upon information and belief, Defendant owns, operates, manages, conducts business, and directs and controls the operations and employees of facilities at several locations in this District, including, but not limited to, facilities at the following addresses: 1) Permain Basin Rental Operations, 4201 S CR 1141, Midland, Texas 79706; and 2) Gardendale Coil Tubing Operations, Gardendale, Texas 79758. *See Contact Us*, GRADY RENTALS (last visited Aug. 5,

2025), https://gradyrentals.com/contact-us/.

13.     Defendant commits acts of infringement from this District, including, but not limited to, importing, selling, offering for sale, importing, using, installing, and/or testing of the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

## THE ASSERTED PATENTS AND ACCUSED PRODUCTS

14.     Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-13 above as though fully set forth in their entirety.

15.     Defendant uses (including testing), causes to be used, sells, offers for sale, imports, provides, supplies, and/or distributes fleet management platform and tracking solutions provided by Pedigree Technologies, LLC, including, but not limited to:

- **Cab-Mate Elite, PM-45, PM-65**;

- **Pedigree ELD**, including, but not limited to, Cab-Mate One-Specs, Cab-Mate Connect, Cab-Mate Flex, Cab-Mate Open, and Cab-Mate Flex Pro;

- **ELD tablets**, including, but not limited to, Cab-Mate Flex, Cab-Mate Open, Cab-Mate Flex Pro, Cab-Mate One-Specs, Cab-Mate Connect, and Cab-Mate Elite;

- **Pedigree dashcams,** including, but not limited to, PJ-40, PM-45, and PM-65 dashcams;

- **Pedigree telematics & gateway devices**, including, but not limited to, PC-640, PS-345, PC-030 or PC-040, PA-130, PC-830, PS-290, PG-1C, PJ-40, PS-955, and PG-1S;

- **Pedigree Fleet Management software/application/website**, including, but not limited to, Oneview platform and/or mobile apps, Oneview mobile app, and

CameraView Setup mobile app;

- **Pedigree driver mobile apps**, including, but not limited to, POV;

- **Pedigree Asset Trackers**, including, but not limited to tracking tags; and

- All other substantially similar products and services of the foregoing offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "<u>Accused Products</u>").

16.     Defendant, using the Accused Products, performs wireless communications and methods associated with performing and/or implementing wireless communications including, but not limited to, wireless communications and methods pursuant to various protocols and implementations, including, but not limited to, Bluetooth, IEEE 802.11, and LTE protocols and various subsections thereof, including, but not limited to, 802.11b and 802.11n.

17.     The wireless communications performed and/or implemented by the Defendant using, *e.g.*, the Accused Products, among other things, generates and transmits packets for wireless communications and communicate data via a plurality of wireless transceivers using a plurality of wireless protocols, and encode data pursuant to one or more of those wireless protocols

18.     Defendant, using the Accused Products, performs singular value decomposition of estimated channel matrices, transmit data over various media, compute time slot channels, generate packets for network transmissions, perform or cause to be performed error estimation in orthogonal frequency division multiplexed ("OFDM") receivers, and various methods of processing OFDM symbols.

19.     For these reasons and the additional reasons detailed below, the Accused Products

practice at least one claim of each of the Asserted Patents.

## COUNT I:   INFRINGEMENT OF U.S. PATENT NO. 7,058,040

20.      Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-19 above as though fully set forth in their entirety.

21.      For purposes of this Count I, the Accused Products include Cab-Mate Elite, PM-45, PM-65, and Pedigree ELD, including, but not limited to, Cab-Mate Flex, Cab-Mate Flex Pro, Cab-Mate Open and all other substantially similar products and services of the foregoing offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

22.      The USPTO duly issued U.S. Patent No. 7,058,040 (the "'040 patent") on June 6, 2006, after full and fair examination of Application No. 09/962,718, which was filed on September 21, 2001.

23.      Fleet Connect owns all substantial rights, interest, and title in and to the '040 patent, including the sole and exclusive right to prosecute this action and enforce the '040 patent against infringers and to collect damages for all relevant times.

24.      Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '040 patent.

25.      The claims of the '040 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods of transmitting data over media having overlapping frequencies.

26.     The written description of the '040 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

27.     Defendant has directly infringed one or more claims of the '040 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

28.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '040 patent, as detailed in **Exhibits A-1 and A-2** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,058,040).

29.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 7,742,388**

30.     Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-19 above as though fully set forth in their entirety.

31.     For purposes of this Count II, the Accused Products include Pedigree ELD, including, but not limited to, Cab-Mate One-Specs, Cab-Mate Connect, Cab-Mate Flex, Cab-Mate Open, Cab-Mate Flex Pro; Pedigree dashcams, including, but not limited to, PJ-40; and Pedigree telematics & gateway devices, including, but not limited to, PC-640, PS-345, PC-030 or PC-040, PA-130, PC-830, PS-290, and all other substantially similar products and services of the foregoing

offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

32.     The USPTO duly issued U.S. Patent No. 7,742,388 (the "'388 patent") on June 22, 2010, after full and fair examination of Application No. 11/185,665, which was filed July 20, 2005.

33.     Fleet Connect owns all substantial rights, interest, and title in and to the '388 patent, including the sole and exclusive right to prosecute this action and enforce the '388 patent against infringers and to collect damages for all relevant times.

34.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '388 patent.

35.     The claims of the '388 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

36.     The written description of the '388 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

37.     Defendant has directly infringed, and continues to directly infringe, one or more claims of the '388 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

38.      Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '388 patent, as detailed in **Exhibits B-1 and B-2** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,742,388).

39.      Defendant had knowledge of the '388 patent at least as of the date Defendant was notified of the filing of this action.

40.      Since at least the time of receiving the complaint, Defendant has indirectly infringed and continues to indirectly infringe the '388 patent by inducing others to directly infringe the '388 patent.  Defendant has induced and continues to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '388 patent by providing or requiring use of the Accused Products.  Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '388 patent, including, for example, claim 1.  *See* Exhibits B-1 and B2.

41.      Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support to users.  Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '388 patent and with the knowledge that the induced acts constitute infringement.  Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '388 patent.  Defendant's inducement is ongoing.  *See* Exhibits B-1 and B-2.

42.     Since at least the time of receiving the complaint, Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '388 patent. Defendant has contributed and continues to contribute to the direct infringement of the '388 patent by its customers, personnel, and contractors. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '388 patent, including, for example, claim 1. The special features constitute a material part of the invention of one or more of the claims of the '388 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing. *See* Exhibits B-1 and B-2.

43.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of Fleet Connect's patent rights.

44.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

45.     Defendant's infringement of the '388 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

46.     Fleet Connect has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Fleet Connect has and will continue to suffer this harm by virtue of Defendant's infringement of the '388 patent. Defendant's actions have interfered with and will interfere with Fleet Connect's ability to license technology. The balance of hardships favors Fleet Connect's ability to commercialize its own ideas and technology. The public interest in allowing Fleet Connect to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

47.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III: <u>INFRINGEMENT OF U.S. PATENT NO. 7,656,845</u>**

48.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-19 above as though fully set forth in their entirety.

49.    For purposes of this Count III, the Accused Products include Cab-Mate Elite, PM-45, PM-65; and Pedigree ELD, including, but not limited to, Cab-Mate Flex Pro, Cab-Mate Flex, Cab-Mate Open and all other substantially similar products and services of the foregoing offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

50.    The USPTO duly issued U.S. Patent No. 7,656,845 (the "'845 patent") on February 2, 2010, after full and fair examination of Application No. 11/402,172, which was filed on April 11, 2006.  A Certificate of Correction was issued on November 30, 2010.

51.    Fleet Connect owns all substantial rights, interest, and title in and to the '845 patent, including the sole and exclusive right to prosecute this action and enforce the '845 patent against infringers and to collect damages for all relevant times.

52.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '845 patent.

53.    The claims of the '845 patent are not directed to an abstract idea and are not limited

to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of wireless communication with a mobile unit.

54.    The written description of the '845 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

55.    Defendant has directly infringed one or more claims of the '845 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

56.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '845 patent, as detailed in **Exhibits C-1 and C-2** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,656,845).

57.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,260,153

58.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-19 above as though fully set forth in their entirety.

59.    For purposes of this Count IV, the Accused Products include Pedigree ELD, including, but not limited to, Cab-Mate One-Specs, Cab-Mate Connect, Cab-Mate Flex, Cab-Mate

Open, Cab-Mate Flex Pro; Pedigree dashcams, including, but not limited to, PJ-40; Pedigree ELD, including, but not limited to, Cab-Mate Flex, Cab-Mate Open, Cab-Mate Flex Pro, Pedigree telematics & gateway devices, including, but not limited to, PC-640, PS-345, PC-030, PC-040, PA-130, PC-830, PS-290, and all other substantially similar products and services of the foregoing offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

60.     The USPTO duly issued U.S. Patent No. 7,260,153 (the "'153 patent") on August 21, 2007, after full and fair examination of Application No. 10/423,447, which was filed on April 28, 2003.

61.     Fleet Connect owns all substantial rights, interest, and title in and to the '153 patent, including the sole and exclusive right to prosecute this action and enforce the '153 patent against infringers and to collect damages for all relevant times.

62.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '153 patent.

63.     The claims of the '153 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

64.     The written description of the '153 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from

and improved upon what may have been considered conventional or generic in the art at the time of the invention.

65.    Defendant has directly infringed one or more claims of the '153 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

66.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '153 patent, as detailed in **Exhibits D-1 and D-2** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,260,153).

67.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V:  INFRINGEMENT OF U.S. PATENT NO. 7,206,837

68.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-19 above as though fully set forth in their entirety.

69.    For purposes of this Count V, the Accused Products include Pedigree fleet management application/software/website, including but not limited to Oneview platform and/or mobile apps such as OneView-Mobile, CameraView Setup mobile app; Pedigree gateway & telematics devices such as PS-290, PG-1C, PJ-40, and PC-640; Pedigree driver mobile apps such as POV app; ELD tablets such as Cab-Mate Flex, Cab-Mate Open, Cab-Mate Flex Pro, Cab-Mate One-Specs, Cab-Mate Connect, Cab-Mate Elite; Pedigree dashcams such as, PM-45 and PM-65; and all other substantially similar products and services of the foregoing offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the

foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

70.    The USPTO duly issued U.S. Patent No. 7,206,837 (the "'837 patent") on April 17, 2007, after full and fair examination of Application No. 10/287,151, which was filed November 4, 2002.

71.    Fleet Connect owns all substantial rights, interest, and title in and to, the '837 patent including the sole and exclusive right to prosecute this action and enforce the '837 patent against infringers and to collect damages for all relevant times.

72.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '837 patent.

73.    The claims of the '837 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

74.    The written description of the '837 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

75.    Defendant has directly infringed one or more claims of the '837 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

76.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '837 patent, as detailed in **Exhibit E** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,206,837).

77.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,593,751

78.     Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-19 above as though fully set forth in their entirety.

79.     For purposes of this Count VI, the Accused Products include the Pedigree fleet management application/software/website, including but not limited to, the Oneview platform, and/or mobile app ssuch as Oneview mobile app, CameraView Setup mobile app; Pedigree driver mobile app such as POV; ELD tablets such as Cab-Mate Flex, Cab-Mate Open, Cab-Mate Flex Pro, Cab-Mate One-Specs, Cab-Mate Connect, and Cab-Mate Elite; Pedigree telematics & gateway devices such as PC-640; and all other substantially similar products and services of the foregoing offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

80.     The USPTO duly issued U.S. Patent No. 7,593,751 (the "'751 patent") on September 29, 2009, after full and fair examination of Application No. 11/262,699, which was filed on October 31, 2005.

81.     Fleet Connect owns all substantial rights, interest, and title in and to the '751 patent,

including the sole and exclusive right to prosecute this action and enforce the '751 patent against infringers and to collect damages for all relevant times.

82.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '751 patent.

83.     The claims of the '751 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting communication systems and methods for executing field operations using handheld devices.

84.     The written description of the '751 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

85.     Defendant has directly infringed one or more claims of the '751 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

86.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '751 patent, as detailed in **Exhibit F** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,593,751).

87.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest

and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 6,961,586

88.     Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-19 above as though fully set forth in their entirety.

89.     For purposes of this Count VII, the Accused Products include Pedigree fleet management application/software/website, including but not limited to, Oneview platform and/or mobile apps such as Oneview mobile app, CameraView Setup mobile app; Pedigree driver mobile apps such as POV app; ELD tablets such as Cab-Mate Flex, Cab-Mate Open, Cab-Mate Flex Pro, Cab-Mate One-Specs, Cab-Mate Connect, and Cab-Mate Elite; Pedigree telematics devices such as PC-640; and all other substantially similar products and services of the foregoing offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

90.     The USPTO duly issued U.S. Patent No. 6,961,586 (the "'586 patent") on November 1, 2005, after full and fair examination of Application No. 09/955,543, which was filed on September 17, 2001.  A Certificate of Correction was issued on June 25, 2013.

91.     Fleet Connect owns all substantial rights, interest, and title in and to the '586 patent, including the sole and exclusive right to prosecute this action and enforce the '586 patent against infringers and to collect damages for all relevant times.

92.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '586 patent.

93.     The claims of the '586 patent are not directed to an abstract idea and are not limited

to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting communication systems and methods for executing field operations using handheld devices.

94.     The written description of the '586 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

95.     Defendant has directly infringed one or more claims of the '586 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

96.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 9 of the '586 patent, as detailed in **Exhibit G** (Evidence of Use Regarding Infringement of U.S. Patent No. 6,961,586).

97.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VIII:        INFRINGEMENT OF U.S. PATENT NO. 8,494,581

98.     Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-19 above as though fully set forth in their entirety.

99.     For purposes of this Count VIII, the Accused Products include Pedigree fleet management application/software/website, including, but not limited to, the Oneview platform,

and/or mobile app such as Oneview mobile app, CameraView Setup mobile app; the Pedigree driver mobile app such as POV; ELD tablets such as Cab-Mate Flex, Cab-Mate Open, Cab-Mate Flex Pro, Cab-Mate One-Specs, Cab-Mate Connect, and Cab-Mate Elite; Pedigree telematics & gateway devices such as PC-640, and all other substantially similar products and services of the foregoing offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

100.    The USPTO duly issued U.S. Patent No. 8,494,581 (the "'581 patent") on July 23, 2013, after full and fair examination of Application No. 12/547,363, which was filed on August 25, 2009.

101.    Fleet Connect owns all substantial rights, interest, and title in and to the '581 patent, including the sole and exclusive right to prosecute this action and enforce the '581 patent against infringers and to collect damages for all relevant times.

102.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '581 patent.

103.    The claims of the '581 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods and systems of collecting and communicating field data based on geographical location.

104.    The written description of the '581 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from

and improved upon what may have been considered conventional or generic in the art at the time of the invention.

105.    Defendant has directly infringed one or more claims of the '581 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

106.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 21 and 22 of the '581 patent, as detailed in **Exhibit H** (Evidence of Use Regarding Infringement of U.S. Patent No. 8,494,581).

107.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IX: **INFRINGEMENT OF U.S. PATENT NO. 7,741,968**

108.    Fleet Connect repeats and re-alleges the allegations in Paragraphs 1-19 above as though fully set forth in their entirety.

109.    For purposes of this Count IX, the Accused Products include Pedigree Fleet Management software/application/website, including but not limited to the Oneview platform, and/or mobile app such as Oneview mobile app, CameraView Setup mobile app; ELD tablets such as Cab-Mate Flex, Cab-Mate Open, Cab-Mate Flex Pro, Cab-Mate One-Specs, Cab-Mate Connect, and Cab-Mate Elite; the Pedigree driver mobile app such as POV; Pedigree telematics & gateway devices such as PC-640, PS-955, PS-345, PC-030, PC-040, PC-830, PS-290, PG-1C, and PG-1S; Pedigree Asset Trackers, including, but not limited to Tracking tags; and Pedigree fleet dashcams, including, but not limited to, PJ-40, PM-45, and PM-65, and all other substantially similar products

and services of the foregoing offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

110.     The USPTO duly issued U.S. Patent No. 7,741,968 (the "'968 patent") on June 22, 2010, after full and fair examination of Application No. 12/143,707, which was filed on June 20, 2008.

111.     Fleet Connect owns all substantial rights, interest, and title in and to the '968 patent, including the sole and exclusive right to prosecute this action and enforce the '968 patent against infringers and to collect damages for all relevant times.

112.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '968 patent.

113.     The claims of the '968 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of systems and methods for permissive navigational tracking where the sending party selectively transmits navigation data to a receiving party over a period of time.

114.     The written description of the '968 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

115.     Defendant has directly infringed, and continues to directly infringe, one or more

claims of the '968 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

116.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 4 of the '968 patent, as detailed in **Exhibit I** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,741,968).

117.    Defendant had knowledge of the '968 patent at least as of the date Defendant was notified of the filing of this action.

118.    Since at least the time of receiving the complaint, Defendant has indirectly infringed and continues to indirectly infringe the '968 patent by inducing others to directly infringe the '968 patent.  Defendant has induced and continues to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '968 patent by providing or requiring use of the Accused Products.  Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '968 patent, including, for example, claim 4. *See* Exhibit I.

119.    Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support to users.  Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '968 patent and with the knowledge that the induced acts constitute infringement.  Defendant has been aware that the

normal and customary use of the Accused Products by others would infringe the '968 patent. Defendant's inducement is ongoing. *See* Exhibit I.

120.     Since at least the time of receiving the complaint, Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '968 patent. Defendant has contributed and continues to contribute to the direct infringement of the '968 patent by its customers, personnel, and contractors.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '968 patent, including, for example, claim 4.  The special features constitute a material part of the invention of one or more of the claims of the '968 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is ongoing. *See* Exhibit I.

121.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of Fleet Connect's patent rights.

122.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

123.     Defendant's direct infringement of the '968 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

124.     Fleet Connect has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Fleet Connect has and will continue to suffer this harm by virtue of Defendant's infringement of the '968 patent.  Defendant's actions have interfered with and will interfere with Fleet Connect's ability to license technology.  The balance of hardships favors Fleet Connect's ability to commercialize its own ideas and

technology.  The public interest in allowing Fleet Connect to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

125.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## DEMAND FOR JURY TRIAL

126.    Fleet Connect hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

127.    WHEREFORE, Fleet Connect requests that the Court find in its favor and against Defendant, and that the Court grant Fleet Connect the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.    A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '388 patent and the '968 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the '388 patent and the '968 patent by such entities;

c.    Judgment that Defendant accounts for and pays to Fleet Connect all damages to and costs incurred by Fleet Connect because of Defendant's infringing activities and other conduct complained of herein;

d.    Judgment that Defendant's infringement of the '388 patent and the '968 patent be found

willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.  Pre-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.  That this Court declare this an exceptional case and award Fleet Connect its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>August 6, 2025</u>                    Respectfully submitted,

                                        By:<u>/s/ James F. McDonough, III</u>

                                        Jonathan Hardt (TX 24039906) *
                                        **ROZIER HARDT MCDONOUGH PLLC**
                                        712 W. 14th Street, Suite A
                                        Austin, Texas 78701
                                        Telephone: (210) 289-7541
                                        Email: hardt@rhmtrial.com

                                        James F. McDonough, III (GA 117088) *
                                        **ROZIER HARDT MCDONOUGH PLLC**
                                        659 Auburn Avenue NE, Unit 254
                                        Atlanta, Georgia 30312
                                        Telephone: (404) 564-1866
                                        Email: jim@rhmtrial.com

                        ***Attorneys for FLEET CONNECT SOLUTIONS LLC***

                                        *Admitted to the Western District of Texas

**<u>List of Exhibits</u>**

A. Evidence of Use Regarding Infringement of U.S. Patent No. 7,058,040 (A-1, A-2)
B. Evidence of Use Regarding Infringement of U.S. Patent No. 7,742,388 (B-1, B-2)
C. Evidence of Use Regarding Infringement of U.S. Patent No. 7,656,845 (C-1, C-2)
D. Evidence of Use Regarding Infringement of U.S. Patent No. 7,260,153 (D-1, D-2)
E. Evidence of Use Regarding Infringement of U.S. Patent No. 7,206,837
F. Evidence of Use Regarding Infringement of U.S. Patent No. 7,593,751
G. Evidence of Use Regarding Infringement of U.S. Patent No. 6,961,586
H. Evidence of Use Regarding Infringement of U.S. Patent No. 8,494,581
I. Evidence of Use Regarding Infringement of U.S. Patent No. 7,741,968